UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN A. BECK,

              Plaintiff,

    -v-                                                5:11-CV-420

TOWN OF GROTON,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                 OF COUNSEL:

OFFICE OF NICHOLAS A. PASSALACQUA     NICHOLAS A. PASSALACQUA, ESQ.
Attorneys for Plaintiff
510 Bleecker Street
Utica, NY 13501

POMEROY, ARMSTRONG, CASULLO &         VICTORIA J. MONTY, ESQ.
   MONTY, LLP
Attorneys for Defendant
16 Tompkins Street
P.O. Box 828
Cortland, NY 13045

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

      This action arises from the enforcement of a municipal land use and development code provision against plaintiff John A. Beck ("plaintiff" or "Beck"). In April 2011 plaintiff filed a *pro se* complaint, in which he alleged that the defendant Town of Groton ("defendant" or "the Town") and its officials violated his constitutional rights by issuing numerous citations

related to large signs he had posted on his private property located within the Town.[1]

In July 2012, a Memorandum–Decision and Order ("MDO") was issued denying the Town's motion for judgment on the pleadings. Beck v. Coats, 2012 WL 2990017 (N.D.N.Y. July 19, 2012). Defendant did not file a motion for summary judgment thereafter. Following two unsuccessful settlement conferences, and after a lengthy stay of the proceedings pending the outcome of a related enforcement action in state court, a one-day bench trial was conducted on September 23, 2014, in Utica, New York.[2] Attorney Nicholas A. Passalacqua represented Beck in a *pro bono* capacity at the bench trial.

Two witnesses testified at the trial: Beck and Gary Coats, the Town's Code Enforcement Officer ("Coats"). The parties stipulated to the admission of numerous exhibits. They similarly stipulated to the fact that the signs on Beck's property did exceed the size and quantity permitted by the applicable Town code. At the conclusion of the trial, the parties were afforded time to review the transcript of the proceeding and submit proposed findings of fact and conclusions of law. Those submissions have been received and reviewed with the transcript. The following are the Findings of Fact and Conclusions of Law required by Federal Rule of Civil Procedure 52(a).

## II. FINDINGS OF FACT

The Town's Land Use and Development Code of 1995, Article 3, section 316.7, as amended in 1997, permits a maximum of two signs of up to fifty square feet in size on

---

[1] Beck's civil rights action is brought pursuant to 42 U.S.C. § 1983.

[2] Although Beck's *pro se* complaint included a demand for a trial by jury, the parties subsequently consented to a bench trial. See ECF Nos. 42, 43.

property zoned Rural–Agricultural ("RA").³ Def.'s Ex. 1, § 316.7. The stated purpose of section 316 of the Code "is to establish specifications for the provision of signs in the Town of Groton which will permit proper identification, preserve and enhance the visual character and quality of the area, and prevent installations which are particularly distracting and hazardous to vehicular traffic." Id. § 316.1.

In early 2009, Beck began erecting large signs on his property, which is zoned RA and includes approximately eight-tenths of a mile of frontage along Route 222 in Groton, New York. In June of that year Coats met with plaintiff and requested that he remove the signs that exceeded section 316.7's limits. Beck refused. On August 4, 2009, Coats mailed plaintiff a letter noting the continued presence of the signs and requesting a meeting to discuss the matter. Pl.'s Ex. 1.

Over ten months later, on June 10, 2010, Coats issued a "Notice of Violation—Order to Remedy" directing plaintiff to remove all signs from his property that were in excess of that permitted by section 316.7. Pl.'s Ex. 2. On July 21, 2010—after Beck failed to remove any signs—Coats served him with a summons charging him with violating section 316.7 by displaying "[s]igns that exceed the number and the square footage allowed." Pl.'s Ex. 3. A bench trial was eventually scheduled for February 8, 2011. However, when plaintiff arrived at the Town court on that date, he was advised that the case had been adjourned. On March 29, 2011, plaintiff was provided with a certificate of disposition noting that the violation had been "dismissed without prejudice." Pl.'s Ex. 5.

---

³ The Town notes that this provision was amended in 2011 to permit no more than two signs of up to twenty square feet in size. However, the 1997 form of section 316.7 will be applied in this case as that version was in effect when Beck erected his signs and initiated this action. Moreover, the parties stipulated to the admission of the 1997 version of the Land Use and Development Code. The defense did not provide a copy of the 2011 version.

Beck initiated this federal action on April 15, 2011. Six days later, on April 21, the Town filed a summons and complaint against him in the Supreme Court, Tompkins County, alleging a violation of section 316.7 and seeking to enjoin him from displaying his signs. Pl.'s Ex. 6. In December 2011, Hon. Robert C. Mulvey granted the Town's motion for summary judgment and ordered Beck to bring his property into compliance with section 316.7 within thirty days. Pl.'s Ex. 7. Plaintiff reportedly removed all signs. However, he apparently reinstalled the signs because, in March 2012, Judge Mulvey entered an order finding him in contempt of the December 2011 order and directing him to remove all signs in excess of that permitted by section 316.7. Pl.'s Ex. 8. Beck complied.

In July 2012 an MDO was issued in this federal action denying the Town's motion for judgment on the pleadings. Beck, 2012 WL 2990017. Upon receiving a copy of that decision, plaintiff mistakenly believed he had prevailed on the merits of his claim. In accordance with that understanding, he immediately re-erected his signs.

In May 2013 Coats—in his official capacity—made a criminal mischief complaint to the Tompkins County Sheriff's Department regarding swastikas displayed on Beck's signs. Coats, who drives by Beck's property every day on his way to work, informed the Sheriff's officer that he thought "the person who did it is targeting him" and noted the ongoing litigation between him and Beck. Pl.'s Ex. 9. In fact, one of the signs read "GARY COATS BELONGS IN PRISON" and had two large swastikas on it. Def.'s Ex. 2-J. Coats "agreed" when the officer advised that he would ask Beck to paint over the swastikas. Pl.'s Ex. 9. The officer responded to plaintiff's home and spoke with Beck, who refused to paint over the swastikas.

The officer relayed Beck's refusal to Coats, who "was not happy but understood." Id.[4]

In December 2013 Beck submitted an application for a sign permit and variance to the Town Zoning Board of Appeals ("ZBA").[5] Pl.'s Ex. 10. This application was eventually denied in March 2014 by letter signed by Paul Fouts, Chair of the ZBA. Pl.'s Ex. 14. The letter indicated that plaintiff's proposed signs "would not be aesthetically appealing and would have an adverse effect on the character of the neighborhood." Id. At trial, Beck produced evidence that one of his neighbors—Robert Fouts, father of Paul Fouts—has erected at least three large signs on his property, which is located within two miles of Beck's property.[6] Coats testified that Robert Fouts had applied for, and been granted by the ZBA, a variance for one of the three large signs on his property.[7] Coats reported that no permit or variance is required for the other two signs because the Fouts property is a working farm and is therefore exempt from section 316.7.

Beck estimates that he has spent approximately $1300 defending himself against the Town in relation to his signs. This estimate includes one hundred dollars for the variance application and associated fees, a sixty-five dollar fee to appeal Judge Mulvey's order, and expenses for purchasing disposable cameras, developing film, and traveling to and from court hearings—some of which had been canceled without prior notice.

---

[4] At trial, Coats denied ever feeling targeted or threatened by Beck and claimed that he reported the signs to the Sheriff's Department due to numerous complaints he received from local residents. He further denied having any conversation with the officer about asking Beck to paint over the signs.

[5] Specifically, he sought a variance permitting the display of four signs measuring 4'x16' and two signs measuring 4'x8'.

[6] Photographs of Fouts' property and signs were admitted without objection from the defense. See Pl.'s Exs. 17, 18, 19.

[7] Coats claimed that Paul Fouts "chaired" the meeting at which his father's variance was granted, but abstained from voting on his father's application. Tr. 80:21, 84:9–11.

### III. **CONCLUSIONS OF LAW**

The United States Supreme Court has long recognized the importance of a private citizen's use of signs to communicate his or her views. See City of Ladue v. Gilleo, 512 U.S. 43, 57 (1994) ("Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute."). Moreover, the well-established "special respect for individual liberty in the home . . . has special resonance when the government seeks to constrain a person's ability to *speak* there." Id. at 58 (internal citation omitted).

An aggrieved party has two primary ways through which to challenge a statute or code provision on First Amendment free speech grounds. First, he may mount a "facial challenge," which "considers only the text of the statute itself, not its application to the particular circumstances of an individual." Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 174 (2d Cir. 2006). Second, an "as-applied challenge . . . requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." Id. Beck attacks section 316.7, and its application, on both grounds.[8]

### A. **Facial Challenge**

When considering a facial challenge to a statute impacting protected speech, the first step is to determine whether it is content-based or content-neutral. Clear Channel Outdoor, Inc. v. Town Bd. of Windham, 352 F. Supp. 2d 297, 303 (N.D.N.Y. 2005). "An ordinance is

---

[8] Although the MDO denying the Town's motion for judgment on the pleadings addressed only a facial challenge to section 316.7, Beck's *pro se* complaint contains adequate allegations to make out an as-applied challenge. The Town did not raise the as-applied challenge in its motion, so the MDO did not address it. The evidence adduced during discovery and presented at trial supports such a claim.

content-based when the content of the speech determines whether the ordinance applies." Id. Content-based regulations trigger strict scrutiny, requiring the government to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Id. (internal quotation marks omitted).

Conversely, a content-neutral ordinance triggers intermediate scrutiny, meaning a municipality "may impose reasonable time, place and manner restrictions on speech as long as they are content neutral, narrowly tailored to serve a significant government interest and leave open 'ample channels for communication.'" Id. (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)); see also Thomas v. Chicago Park Dist., 534 U.S. 316, 323 & n.3 (2002). "[W]hile aesthetics and traffic safety are regularly found to be substantial enough government interests to support a content-neutral regulation, those interests are rarely compelling enough to support a content-based regulation." Clear Channel Outdoor, Inc., 352 F. Supp. 2d at 304.

Section 316.7 of the Town Land Use and Development Code is content-neutral on its face. This provision regulates the size and number of signs permitted on certain property, and its application is not dependent on the content of the sign. According to section 316.1, it is intended to "permit proper identification, preserve and enhance the visual character and quality of the area, and prevent installations which are particularly distracting and hazardous to vehicular traffic." Def.'s Ex. 1. These are significant government interests. See Clear Channel Outdoor, Inc., 352 F. Supp. 2d at 304; Cent. Radio Co. v. City of Norfolk, 776 F.3d 229, 237 (4th Cir. 2015) ("Such concerns for aesthetics and traffic safety undoubtedly are substantial government interests."). Moreover, section 316.7 allows for alternate means of expression; to wit, a total of two signs that can measure up to fifty square feet in area.

Therefore, section 316.7 is content-neutral and facially constitutional.

### B. As-Applied Challenge

The determination that section 316.7 is facially content-neutral does not end the inquiry. Indeed, the discriminatory application of an otherwise constitutional statute can violate one's civil rights. Beck's "as-applied" challenge is essentially an equal protection claim. He argues that the Town has selectively enforced the Land Use and Development Code in violation of his right to equal protection of the laws and in such a manner that has interfered with his right to free speech.

A violation of equal protection by "selective enforcement" occurs if: "(1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on an impermissible consideration such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Crowley v. Courville, 76 F.3d 47, 52–53 (2d Cir. 1996) (internal quotation marks and ellipsis omitted). Different treatment of a person similarly situated, by itself, is not sufficient to establish malice or bad faith. Id. at 53. Beck has established both elements of his as-applied claim by a preponderance of the evidence.

First, plaintiff has presented sufficient credible evidence to show he was treated differently than his neighbor, Robert Fouts. The Town consistently and repeatedly enforced section 316.7 of the Land Use and Development Code against Beck. It did not bring any enforcement action against Fouts related to the two large signs posted on his property, which is located within two miles of plaintiff's property. See Pl.'s Ex. 17. At trial, Coats explained that these two particular signs are exempt from section 316.7 because the Fouts property is a "working farm." Tr. 75:10–14. He also claimed that one of the signs was merely temporary

- 8 -

and, therefore, outside the ambit of the Code. However, he did not require Fouts to provide any documentation or other proof that his property and signs fall within such exemptions. Nor did defense counsel present such evidence at trial. Instead, Coats unilaterally determined that the Fouts property and signs are exempt from section 316.7. See Tr. 82–83. Moreover, he indicated that he has the discretion to "act autonomously" when making such decisions. Tr. 88:24–25.

Second, it must be acknowledged that Robert Fouts's son, Paul Fouts, happens to be the Chair of the ZBA. In fact, according to Coats, Paul Fouts chaired the meeting at which the ZBA granted his father's sign permit and variance. While there is admittedly no direct evidence that Coats or the Town gave favorable treatment to Robert Fouts due to the position of his son, the appearance of a conflict adds circumstantial evidence to Beck's claim of selective enforcement.[9]

Third, there is evidence that the selective treatment occurred under circumstances suggesting an intent to inhibit or punish Beck's exercise of his right to free speech, and with malicious or bad faith. Beginning in 2009, the Town attempted to bring his property into compliance with section 316.7. Not only did plaintiff refuse to comply with almost every request from Coats, he subsequently erected signs specifically mentioning the Town officials. See, e.g., Def.'s Exs. 2-A, 2-C, 2-J (depicting signs upon which plaintiff had drawn swastikas and written that Gary Coats and Glen Morey, Town Supervisor, belong in prison). He also initiated this federal action, signaling an intent to assert his civil rights.

---

[9] As the Town points out, the issue of Beck's variance application is arguably outside the pleadings as it occurred while this litigation proceeded to trial. However, were this matter to be considered, it further supports a finding that Beck—who requested a reasonable variance to permit four large signs along an almost mile-long stretch of roadway—was treated differently than his neighbor.

In response, the Town officials abandoned the ongoing action in Town court and filed an enforcement action against Beck in the Supreme Court, Tompkins County. Further, in May 2013 Coats—in his official capacity, on official time, and from his office—made a criminal mischief complaint to the Sheriff's Department regarding swastikas displayed on Beck's signs. Coats noted the ongoing state and federal litigation and told the Sheriff's officer that he thought Beck "is targeting him." Pl.'s Ex. 9. Coats "agreed" when the officer advised that he would ask Beck to paint over the swastikas. Id. After plaintiff refused to do so, Coats "was not happy but understood." Id. This conduct reflects an intent to inhibit Beck's exercise of free speech based, at least in part, on the content of his signs.

At trial, Coats denied the Sheriff's officer's account of this incident, claiming he never felt threatened or targeted and did not ask the officer to encourage Beck to paint over the signs. This testimony is simply not credible. Coats had been embroiled in ongoing state and federal litigation with Beck regarding his signs, he passed Beck's property at least twice daily, and he observed the large signs that mentioned him by name, asserted that he belonged in prison, and contained large swastikas. His trial testimony is belied by common sense and the officer's written report. See Pl.'s Ex. 9. The officer spoke with Coats at least twice that day and had no reason to fabricate his report. The totality of the circumstances suggests Coats acted with ill will and bad faith towards plaintiff when he contacted the Sheriff's Department.

In short, considering all of the above, Beck has established by a preponderance of the evidence that the Town selectively enforced section 316.7 of the Land Use and Development Code in violation of his right to equal protection of the laws and in such a way as to interfere with his right to free speech.

**C. Remedy**

As Beck will prevail on his as-applied challenge, the only remaining matter to be addressed is that of an appropriate remedy. In his complaint, plaintiff requested compensatory damages as well as "an end to this harrassment [sic] of my civil rights." Compl. ¶ 6.[10] This latter request is reasonably construed as an appeal for injunctive relief.

At trial Beck testified that he has spent approximately $1300 defending himself against the various citations issued by the Town, appealing Judge Mulvey's order, applying for a sign permit and variance, purchasing disposable cameras, developing film, and traveling to and from the numerous court hearings and settlement conferences. The defense has not challenged this estimate, and this figure is reasonable.

A district court enjoys broad discretion when fashioning appropriate equitable relief. Reynolds v. Giuliani, 506 F.3d 183, 189 (2d Cir. 2007). As explained above, the Town selectively enforced section 316.7 against Beck while allowing his neighbor to display at least two large signs without a permit, variance, or proof of exemption from the ordinance. Further, Coats attempted to regulate part of the content of Beck's signs when he contacted the Tompkins County Sheriff's Department and had an officer respond to plaintiff's home and encourage him to paint over the swastikas. Therefore, an appropriate equitable remedy is an injunction preventing the Town from issuing citations or otherwise enforcing section 316.7 against Beck for signs posted on his property that are within the limits of his reasonable variance request—four signs measuring 4'x16' along Route 222 and two signs measuring 4'x8' along Champlin Road. Further, the Town will be enjoined from requesting or requiring

---

[10] Beck also sought punitive damages, but such claim was dismissed in the July 2012 MDO. Beck, 2012 WL 2990017, at *7.

Beck to paint over or alter any part of the permissible signs.

## IV. **CONCLUSION**

Section 316.7 of the Town's Land Use and Development Code is content-neutral on its face, imposes reasonable time, place, and manner restrictions on speech, is narrowly tailored to serve significant government interests, and leaves open ample channels for communication. However, the Town has selectively enforced this ordinance against Beck in an unconstitutional manner that has interfered with his First Amendment right to free speech and caused him to incur monetary damages.

Accordingly, it is

ORDERED that

1. Judgment is GRANTED in favor of plaintiff John A. Beck and against the defendant Town of Groton in the total amount of thirteen hundred dollars ($1300) in compensatory damages; and

2. The defendant Town of Groton, its officers, agents, servants, employees, or representatives are hereby ENJOINED from issuing citations or otherwise enforcing section 316.7 of the Land Use and Development Code against plaintiff John A. Beck for signs posted on his property that are within the following limits: (1) Four signs measuring 4'x16' along Route 222; and (2) two signs measuring 4'x8' along Champlin Road. The Town is further ENJOINED from requesting or requiring Beck to paint over or alter any part of the permissible signs.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

_____
United States District Judge

Dated: April 1, 2015
       Utica, New York